**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 94-5621

SYED ABBAS, a/k/a Qasim,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frank A. Kaufman, Senior District Judge.
(CR-92-96-K)

Argued: December 7, 1995

Decided: January 31, 1996

Before RUSSELL, WILKINSON, and NIEMEYER, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Wilkinson and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Michael Gregory Middleton, Baltimore, Maryland, for
Appellant. Jan Paul Miller, Assistant United States Attorney, Green-
belt, Maryland, for Appellee. **ON BRIEF:** William H. Murphy, Jr.,
Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United
States Attorney, Greenbelt, Maryland.

_____

**OPINION**

RUSSELL, Circuit Judge:

After nine days of trial testimony regarding his participation in a heroin conspiracy in Baltimore, Syed Qasim Abbas ("Abbas") was convicted for conspiring to import heroin into the United States in violation of 21 U.S.C. § 963; conspiring to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846; and distribution of heroin in violation of 21 U.S.C. § 952(a). Abbas appeals his conviction asserting that the district court: (1) erred in refusing to permit him to reopen his case in order to call a co-defendant who had formally invoked his Fifth Amendment protection against self-incrimination; (2) improperly admitted a Drug Enforcement Agency ("DEA") chemist's expert testimony that the seized substance was heroin; and (3) improperly instructed the jury. Affirming his conviction, we hold that the district court properly exercised its discretion in rejecting Abbas' motion to reopen his case; that the DEA expert testimony was admissible; and that the jury instructions were proper in both form and substance.

I.

According to the evidence of record, Abbas drove Mahmood Ali ("Ali") to Baltimore to sell heroin, which Ali had just smuggled in from Pakistan via Newark Airport. While in Baltimore, Abbas and Ali sold over one kilogram of 80% pure heroin to another known dealer and an undercover United States Customs Service agent. Their entire meeting, which was the first in a series of transactions and negotiations, was recorded on video and audio tape. During the sale, Abbas talked openly about future drug transactions, the difficulty in dealing with small bills, and the difference between liquid and powdered forms of drugs. Abbas and Ali received $15,000 as a courier fee. Despite the evidence against him, Abbas maintains that he had no knowledge that the Baltimore transaction was a heroin deal. Instead, Abbas insists that he believed he was participating in a gemstone sale.

II.

We first review Abbas' contention that the district court's denial of his motion to reopen his case in order to call a co-defendant who had

formally invoked his Fifth Amendment protection against self-incrimination denied Abbas his constitutional right to present defense witnesses. The Sixth Amendment provides that a criminal defendant has a right to present his best defense. U.S. Const. amend. VI. A defendant's right to present his best defense includes a right to obtain the testimony of witnesses and compel their attendance. Washington v. Texas, 388 U.S. 14 (1967). In fact, the right to call witnesses may sometimes trump state and federal evidentiary rules and statutes. Id. at 17-23 (holding that Texas state statute prohibiting persons charged or convicted as co-conspirators in the same crime from testifying for one another arbitrarily violated the accused's right to put witnesses on the stand as well as compel their attendance in court); see Chambers v. Mississippi, 410 U.S. 284 298-303 (1973) (holding trial judge's mechanistic application of Mississippi evidentiary rule prohibiting inadmissible hearsay, which proved vital to the accused's defense, violated accused's right to present witnesses). One's right to call witnesses, however, exists only during trial. After the close of evidence, the defendant no longer has an absolute right to call witnesses, but he may be permitted to do so only at the discretion of the trial court. United States v. Paz, 927 F.2d 176, 179 (4th Cir. 1991) (emphasis added). From the evidence of record, Abbas was given every opportunity to call witnesses and present his best defense before he rested his case. The only question before this court, therefore, is whether the district court abused its discretion in failing to reopen Abbas' case after the close of evidence so that he could recall a witness.

On the eighth day of trial, Abbas informed the district court and opposing counsel for the first time of his intention to call as a witness Khalid Khan ("Khan"), a co-conspirator in the heroin transaction. After promptly contacting Khan's attorney, arrangements were made to transport Khan from the city detention center--where he was being held pending the Government's case against him*--to court the following morning.

---

*Khalid Khan helped orchestrate the heroin smuggling from Pakistan by recruiting Mahmood Ali to illegally carry the drugs into the United States. In its efforts to curtail international drug trafficking, the Government went to great lengths to extradite Khalid Khan from Pakistan to face trial.

Abbas proffered Khan would testify that on the day of the Baltimore transaction, Ali assured Khan that Abbas was a stranger to the co-conspirators; that Abbas knew nothing about the heroin deal; and that Abbas believed they were conducting a gemstone transaction in Baltimore. When called to testify, however, Khan, on the advice of counsel, repeatedly asserted his Fifth Amendment privilege against self-incrimination. Subsequently, the district court entertained motions throughout the morning regarding Khan's proffered testimony, Khan's Fifth Amendment assertion, and Abbas' motion that the district court confer judicial immunity to Khan. After these motions were denied, Abbas neither called additional witnesses nor testified himself. Both sides rested and the jury was told that closing arguments would commence after lunch.

During luncheon recess, and while in lock-up together, Khan told Abbas he would testify despite his Fifth Amendment privilege. Abbas reported Khan's changed disposition to the district court and motioned that he be allowed to reopen his case to call Khan to the stand. The Government objected and the district court denied Abbas' motion to reopen his case.

It is within the district court's sole discretion to reopen a case to admit new evidence. Paz 927 F.2d at 179; and United States v. Peay, 972 F.2d 71, 73 (4th Cir. 1992), cert. denied , 113 S. Ct. 1027 (1993). When reviewing whether or not the judge abused his discretion in not reopening a case, we examine (1) whether the party moving to reopen provided a reasonable explanation for failing to present the evidence in its case-in-chief; (2) whether the evidence was relevant, admissible, or helpful to the jury; and (3) whether reopening the case would have infused the evidence with distorted importance, prejudiced the opposing party's case, or precluded the opposing party from meeting the evidence. Id.

To prevail under Peay, Abbas must demonstrate each prong of the test. If Abbas fails to substantiate even one prong of the test, due deference is given to the discretion of the sitting judge.

After analyzing the first prong of Peay, we conclude that Abbas did not provide the district court with a reasonable explanation of why he was unable to present the evidence during his case-in-chief. Although

4

we know that the intended evidence was precluded because Khan had asserted his Fifth Amendment privilege, we find it suspicious, as did the district court, that Khan decided to waive his privilege against self-incrimination and testify after he had a personal conversation with Abbas. Consequently, we find no error in the district court's decision to uphold Khan's right against self-incrimination despite his alleged change of heart. Where the right to compulsory process and self-incrimination are in conflict, the privilege against self-incrimination prevails. Royal v. State of Maryland, 529 F.2d 1280, 1283 (4th Cir. 1976).

Even though we need not reach the second prong of the test because Khan's testimony was precluded from trial as a result of his Fifth Amendment assertion, we find it necessary to comment on the testimony's questionable admissibility. The record reveals Abbas proffered that Khan had a conversation with Ali, another co-conspirator, in which Ali told Khan that Abbas was a stranger to the deal, and that Ali had convinced Abbas to drive Ali to Baltimore to take part in a gemstone transaction. This brand of hearsay would not be considered hearsay and is admissible pursuant to Federal Rule of Evidence 801(d)(2)(E). Khan's proffered testimony contains a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Rule 801(d)(2)(E) however, applies only when the statement is offered against a party of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The rule permits introduction of co-conspirators' statements as evidence against defendant co-conspirators. Id. In this instance, Khan's proffered testimony was being offered by Abbas--a party to the conspiracy--against the prosecution. But the prosecution is not a "party" against whom such testimony may be tendered. United States v. Kapp, 781 F.2d 1008, 1014 (3rd Cir.), cert. denied, 475 U.S. 1024 (1986). Thus, we conclude that Khan's proffered testimony was inadmissible.

As to the third prong of the test, we conclude that even if the district court had permitted Khan to testify after delaying the jury all morning, and after initially acknowledging Khan's Fifth Amendment privilege, Khan's testimony would have carried with it distorted importance which would have infected the proceedings.

5

We therefore hold that the district court did not abuse its discretion in prohibiting Abbas from reopening his case and introducing inadmissible testimony.

III.

We next turn to Abbas' argument that the district court should have granted Khan immunity because the Government's threat to use Khan's testimony against him in his upcoming trial forced Khan to assert his Fifth Amendment privilege. Abbas contends that the Government's refusal to grant immunity was a deliberate attempt to distort the judicial fact-finding process. We reject Abbas' contention as meritless.

We have held that the district court is without the authority to confer immunity sua sponte. See United States v. Klauber, 611 F.2d 512, 517 (4th Cir. 1979) (emphasizing that the district judge lacks the power to confer immunity on witnesses), cert. denied, 446 U.S. 908 (1980); and Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir.) ("A district judge is not authorized to initiate immunity"), cert. denied, 423 U.S. 933 (1975). And the prosecution is vested with the sole discretion to grant immunity. United States v. Karas, 624 F.2d 500, 505 (4th Cir. 1980), cert. denied, 449 U.S. 1078 (1981). On occasion however, the district court can compel the prosecution to grant immunity when (1) the defendant makes a decisive showing of prosecutorial misconduct or overreaching and (2) the proffered evidence would be material, exculpatory and unavailable from all other sources. United States v. Mitchell, 886 F.2d 667, 669-70 (4th Cir. 1989); United States v. Gravely, 840 F.2d 1156, 1160 (4th Cir. 1988). Without misconduct or overreaching, the Government is not required to provide defense witnesses immunity. Id.

In the instant case, we find no evidence of misconduct or overreaching in the prosecution's refusal to grant immunity to Khan. Despite Abbas' arguments to the contrary, the Government did not deliberately deny Khan immunity so as to distort the fact-finding process. In fact, the Government exercised sound judgment in its refusal to grant immunity. The Government expended great efforts and resources to have Khan extradited from Pakistan to stand trial. Granting Khan immunity would be an insult to the Pakistani authorities.

6

Furthermore, Khan was a significant figure in the illegal heroin trade. It would be preposterous to grant immunity to an orchestrator of international drug smuggling to secure the conviction of a seemingly lower-level co-conspirator. In sum, we refuse to conclude that the Government's denying immunity to Khan--the subject of impending prosecution--amounted to prosecutorial misconduct. The district court therefore, lacked the necessary authority to compel the Government to grant Khan immunity.

IV.

We next turn to Abbas' contention that the district court erred in admitting a DEA chemist's expert testimony that the substance obtained in the Baltimore transaction was heroin. Abbas contends the admission of the DEA chemist's expert test results, which relied on "standards" determined by other chemists, violated his Sixth Amendment right to confront witnesses because he was not given an opportunity to cross-examine the chemists who developed the standards. We find Abbas' claim to be meritless.

While it is axiomatic that the Sixth Amendment ensures that an accused has the right to confront witnesses, we recognize that the right to confrontation is not violated by an expert's reliance on out-of-court sources where the utility of trial confrontation would be remote and of little value to either the jury or the defendant. Reardon v. Manson, 806 F.2d 39, 41 (2d Cir.), cert. denied 481 U.S. 1020 (1986); accord United States v. Simmons, 773 F.2d 1455, 1459-60 (4th Cir. 1985) (finding the admission of an ATF firearms form under the general exception to the hearsay rule did not violate the Confrontation Clause because the utility of confronting record-keepers at trial was so negligible and did not require that the prosecution produce a seemingly available witness). It is extremely rare for an expert's proffered opinion not to rely upon information gathered out of court. As the Second Circuit has stated:

> Reliance upon the output of others does not necessarily violate the Confrontation Clause where the expert is available for questioning concerning the nature and reasonableness of his reliance . . . This is particularly true where the defendant

7

> had access to the same sources of information through sub-poena or otherwise.

Reardon, 806 F.2d at 43 (emphasis added).

In the instant case, the DEA chemist conducted the following comparison tests: gas chromatography, infrared spectroscopy, and mass spectroscopy. All of the tests are conducted in such a way that the unknown substance is compared to a standards graph generated by a known sample of heroin. According to the trial record, the DEA chemist testified that he compared the unknown substance he was analyzing to several different known standards. He obtained these standards from a "standards" library he maintains, from Georgia's Crime lab computer library, from published standards (textbooks etc.) and from authenticated standards given to the DEA laboratories. The authenticated standards are tested by DEA technicians and kept in a standards vault. The DEA chemist further testified that all of the standards in his personal library of standards were based on the authenticated standards maintained by the DEA laboratories. Finally, the DEA chemist testified that although he could not recall the specific names of the published textbooks he used in this particular case, he used books and standards normally accepted in the field of chemical analysis.

Abbas seeks application of a rule that would make it nearly impossible to rely on any scientific standard. Abbas insists that a standard could be used at trial only if the defendant could cross-examine all of the scientists whose work contributed to the creation of any standard. We conclude that Abbas' demand is unrealistic and ignores the very reason why Federal Rule of Evidence 703, "Bases of Opinion by Experts," exists.

Rule 703 exists so that scientific standards may be admitted as trustworthy and reliable exceptions to the hearsay rule, thereby negating the need to parade into court each and every individual either remotely or intimately involved in the creation of a particular standard. Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or

8

made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The rule encapsulates a policy interest in allowing scientific standards into evidence with minimal expense and delay. From the evidence of record, we find that the DEA chemist testified that his use of standards in the gas chromatography, infrared spectroscopy, and mass spectroscopy tests are generally accepted standards in the field of qualitative chemical analysis, and are admissible under Fed. R. Evid. 703. See, e.g., United States v. Jones, 687 F.2d 1265 (8th Cir. 1992); United States v. Hollman, 541 F.2d 196 (8th Cir. 1976). We conclude therefore, after examining both the policy interest surrounding the admission of accepted scientific testimony and the DEA chemist's testimony that his tests relied used industry standards, that Abbas' right of Confrontation was not denied. Abbas could have directly rebutted the weight of the standards evidence by proffering his own expert testimony and by vigorously cross-examining the DEA chemist.

V.

Finally, we turn to Abbas' contention that the district court erred in its jury instruction. The decision of whether to give a jury instruction and the content of an instruction are reviewed for abuse of discretion. United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992), cert. denied, 113 S. Ct. 1013 (1993). Abbas contends the district court erred in giving an instruction on "willful blindness." Abbas also argues the district court should have given an instruction defining reasonable doubt. In rejecting each of Abbas' arguments, we hold that the district court did not abuse its discretion because the instructions were properly submitted to the jury in both form and substance.

A.

Abbas first contends that the district court erred in giving the standard jury instruction on willful blindness. "A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate igno-

9

rance." United States v. Gruenberg, 989 F.2d 971, 974 (8th Cir.), cert. denied, 114 S. Ct. 204 (1993). Moreover, where the evidence presented in the case supports both actual knowledge on the part of the defendant and deliberate ignorance, a willful blindness instruction is proper. Id. at 974; United States v. Arias, 984 F.2d 1139, 1143 (11th Cir.), cert. denied, 113 S. Ct. 2979 (1993). Abbas maintains however, that there was no trial evidence of willful blindness and that, by the mere fact the instruction was given, the jury may have erroneously construed that the government had produced such evidence. We conclude the record demonstrates that Abbas' claim is meritless.

Abbas' defense centered on his claim that he thought the transaction involved gemstones and not heroin. His defense, therefore, met the first requirement for a willful blindness instruction--the defendant asserted a lack of guilty knowledge. Abbas also satisfied the second requirement because the evidence supported an inference of deliberate ignorance. Ali testified that Abbas knew that the suitcase contained heroin and that he actively participated in the Baltimore transaction and negotiations. Taped recordings confirm that Abbas discussed future drug transactions, the difficulty in dealing with small bills, and the difference between liquid and powdered forms of drugs. Thus, we conclude that there was sufficient evidence from which the jury could find that Abbas consciously closed his eyes to the fact he was involved in an obvious drug transaction. And the district court did not err in giving the jury a willful blindness instruction.

B.

Abbas also contends that the trial judge should have given an instruction defining reasonable doubt. We find that the district court properly denied Abbas' request for such an instruction. In fact, we have repeatedly cautioned trial courts in attempting to define reasonable doubt. See United States v. Ricks, 882 F.2d 885, 894 (4th Cir. 1989), cert. denied, 493 U.S. 1047 (1990); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988) (stating that this circuit disapproves of judicial efforts to define reasonable doubt absent specific jury request); United States v. Woods, 812 F.2d 1483, 1487 (4th Cir. 1987) (holding trial judge correct in refusing to elaborate on reasonable doubt definition); Murphy v. Holland, 776 F.2d 470, 475 (4th Cir. 1985) (holding that courts should avoid defining reasonable

10

doubt unless specifically requested to do so by the jury) <u>remanded for consideration on other grounds</u>, 475 U.S. 1138 (1986). Hence, Abbas' argument is meritless.

VI.

For the foregoing reasons, Abbas' sentence as imposed by the district court is

<u>AFFIRMED</u>.

11