**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4850

EDWARD BROWN,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-97-218)

Submitted: December 30, 1998

Decided: January 28, 1999

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph N. Bowman, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Harry Litman, Special Assistant
United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Edward Brown appeals from his convictions for simple assault, in violation of 18 U.S.C. § 113(a)(5) (1994); and prisoner possession of a weapon capable of causing death or bodily injury, in violation of 18 U.S.C.A. § 13 (West Supp. 1998) (assimilating Va. Code Ann. § 53.1-203(4) (Michie 1988)).* The district court sentenced Brown to a term of thirty-three months imprisonment. For the following reasons, we affirm Brown's convictions.

A corrections officer at the Occoquan Facility in the Lorton Reformatory testified that, early one evening, Brown and Willie Fears exchanged heated words. Later that evening, Brown, Fears, and other prisoners were watching television in the common area of the dormitory. Brown was waiting nearby when Fears got up and walked towards the bathroom. Brown followed Fears towards the bathroom. A corrections officer testified that, as the two men reached the entrance to the bathroom, Brown reached into his pants area and "pull[ed] out something and beg[an] a striking motion." The officer testified that the stabbing motion occurred immediately after Brown reached into his pants. Based on his experience and the "stabbing motion," the officer opined that a stabbing was taking place and radioed for help. However, the corrections officer did not actually see a knife. Brown immediately left the area and moved quickly towards the sleeping area of the dormitory. The corrections officer observed that Fears was bleeding from the abdominal area and escorted Fears to the front of the dormitory so that he could be taken to the infirmary. A search of the dormitory, conducted shortly after the incident, revealed a handmade knife stained with blood under an inmate's bed; it was not Brown's bed.

The shift lieutenant on duty that evening testified that he responded to the emergency alert and observed Fears, who was covered with blood, being escorted by corrections officers out of the dormitory.

_____
*Brown was initially charged with assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3) (1994), and prisoner possession of a weapon capable of causing death or bodily injury.

The lieutenant escorted Fears from the dormitory to the infirmary. The prison medical staff gave Fears initial treatment for his wounds and determined that he needed additional medical treatment at a local hospital. After Fears was escorted out of the prison, the lieutenant returned to the infirmary and encountered Brown. Brown stated to the lieutenant, "I did what I had to do." Brown further explained that Fears "had been threatening him and pressing him in the unit." Brown stated that "he did something to [ ] Fears before [ ] Fears would do something to him."

The emergency room physician who treated Fears at the local hospital testified that Fears had three small puncture wounds in the left upper chest and armpit area and one larger wound, about one centimeter, in his abdomen. The physician testified that"[s]omething sharp" would have caused the wounds.

The Government also sought to offer the testimony of the physician who treated Fears and Brown at the prison infirmary. Brown objected to the testimony, arguing that it would be cumulative. The district court ruled that the testimony "would be cumulative except as to the condition of the defendant at the time." The district court noted that "the extent of the injury is not at issue" because Brown was charged with assault with a dangerous weapon and he didn't have to injure at all to commit the offense.

After the Government rested, Brown moved under Fed. R. Crim. P. 29, for a judgment of acquittal on both charges, assault with a deadly weapon and prisoner possession of a shank. Brown argued that there was insufficient evidence to support a conviction because the Government did not provide any evidence that Brown possessed a dangerous weapon. The court stated that it had "a real problem with [the] dangerous weapon" and asked if the Government was prepared to proceed on a lesser-included offense theory. In response, the Government pointed to the eyewitness account of the stabbing motion, the knife found in the dormitory, the bloody condition of Fears, and the medical testimony. The court stated that it was troubled by the medical description of Fears's wounds as "superficial" because that did not mean that the wounds were caused by a dangerous weapon.

The Government offered to reopen the case to call an additional witness, a special agent with the Federal Bureau of Investigation

3

(FBI), to whom Brown had admitted having had a knife. The Government argued that it should be allowed to introduce the additional witness because the Government was led to understand that the nature of Fears's wounds was not going to be disputed and was not going to be relevant. Over Brown's objection, the district court allowed the Government to reopen the case to introduce the testimony of the FBI agent.

The agent testified as to his post-arrest conversation with Brown, in which Brown stated he had been keeping a shank on his person for protection in the event of a confrontation with Fears. Brown further stated to the agent that "he withdrew this knife and stabbed [Fears]." After the Government rested, Brown made another motion for a judgment of acquittal on both charges under Rule 29, which the district court denied. Brown presented his defense, which focused on a claim of self-defense. Brown testified that Fears had initiated the attack with a punch that he managed to avoid, thus, averting any injury to himself. Brown admitted having a knife during the altercation and "waiving it so [Fears] could see it to keep away from [Brown]." After the close of all of the evidence, Brown renewed his Rule 29 motion, and the district court denied it.

The district court declined to give the jury a self-defense instruction after concluding that there was insufficient evidence to support the defense. The jury convicted Brown of simple assault (a lesser included offense of assault with a dangerous weapon) and prisoner possession of a shank. Brown timely appeals.

On appeal, Brown claims that: (1) the district court abused its discretion when it allowed the Government to present additional evidence after the Government rested its case and after Brown moved for a judgment of acquittal on the grounds that the evidence was insufficient to support a conviction; and (2) the evidence was insufficient to support a conviction for prisoner possession of a shank.

A district court's decision to reopen a case to admit new evidence is "within the district court's sole discretion." United States v. Abbas, 74 F.3d 506, 510 (4th Cir. 1996). In determining whether a district court abused its discretion in reopening a case, this court examines "(1) whether the party moving to reopen provided a reasonable expla-

4

nation for failing to present the evidence in its case-in-chief; (2) whether the evidence was relevant, admissible, or helpful to the jury; and (3) whether reopening the case would have infused the evidence with distorted importance, prejudiced the opposing party's case, or precluded the opposing party from meeting the evidence." Id. at 510-11. We find that, considering the circumstances, the district court was within its discretion in permitting the Government to reopen the case to present additional evidence of Brown's possession of a shank.

The Government moved to reopen the case based on the court's expressed concern that there was no evidence that Brown possessed a "dangerous weapon." The court reasoned that the medical testimony that Brown's wounds were "superficial" called into question the proof of possession of a dangerous weapon. The Government pointed out the court's prior ruling that "the extent of the injury is not at issue in this case." Based on that ruling, the court had excluded evidence that would have reinforced the severity of the victim's wounds, the issue that was the source of the court's concern. Thus, the Government provided a reasonable explanation for not having previously presented evidence dealing with Brown's possession of a weapon.

Also, the evidence offered by the Government after it reopened its case was admissible and helpful to the jury. The additional evidence consisted of testimony from an FBI agent that Brown had confessed to possessing a shank and using it to attack Fears. The testimony was probative and helpful to the jury's assessment of Brown's guilt.

Lastly, there was no undue prejudice to Brown from the introduction of the additional testimony. Brown had previously been provided in discovery with a copy of the FBI agent's statement and he cross-examined the agent.

Brown contends that the district court erred in allowing the Government to reopen its case because, prior to the reopening, the evidence was insufficient to support a conviction. Even if the Government's evidence had been insufficient at the point of the reopening, that is not a relevant factor in reviewing the district court's decision to reopen the Government's case. See Abbas, 74 F.3d at 510-11. Brown also argues that the district court's decision to reopen the Government's case after Brown moved for a judgment of acquittal

5

violated his rights against being put in double jeopardy. Brown's argument lacks merit because there was no judgment that the evidence was insufficient to support a conviction. See United States v. Mackins, 32 F.3d 134, 137 (4th Cir. 1994).

Brown also claims on appeal that the evidence was insufficient to support his conviction for prisoner possession of a shank and, thus, the district court should have granted his Rule 29 motion for a judgment of acquittal. We disagree. The denial of a Rule 29 motion for a judgment of acquittal should be affirmed on appeal if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). The district court denied Brown's Rule 29 motions for a judgment of acquittal after the Government rested its case and at the end of all the evidence.

The evidence included testimony regarding Brown's stabbing motion, the opinion of an experienced corrections officer that a stabbing had occurred, the bloody condition of Fears, the discovery of a weapon in the area to which Brown had retreated after the assault, Brown's admission that he possessed a shank, and the FBI agent's testimony that Brown admitted possessing a shank and using it to attack Fears.

Accordingly, we affirm Brown's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6