**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 97-4129

ARUNA MATAI,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                        No. 97-4130

SANDEEP MATAI, a/k/a Nick Matai,
a/k/a Sondi Matai,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-96-8-F)

Argued: April 10, 1998

Decided: February 10, 1999

Before MOTZ, Circuit Judge, STAMP, Chief United States District
Judge for the Northern District of West Virginia, sitting by
designation, and DOUMAR, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Blount Cheshire, V, CHESHIRE & PARKER, Raleigh, North Carolina, for Appellants. Scott L. Wilkinson, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Aruna Matai and Sandeep Matai appeal their convictions in the district court on charges of credit card fraud and money laundering. They also appeal the district court's order directing forfeiture of the inventory of two stores owned by Aruna Matai. Finding no error, we affirm.

I.

On October 28, 1996, Aruna Matai and Sandeep Matai were convicted of conspiracy to commit credit card fraud, credit card fraud, and money laundering in violation of 18 U.S.C. §§ 371, 1029, and 1956. Included in that verdict was a special verdict of forfeiture of $11,284.55 in currency and the inventories of Home Boys of New York and Dan Hills Clothing store, the two Raleigh, North Carolina clothing stores owned by Aruna Matai and operated by her and Sandeep Matai, her son. On November 13, 1996, the district court denied a motion for judgment notwithstanding the verdict filed by Aruna Matai.

Evidence introduced at the trial showed that stolen credit cards were presented and used at the clothing stores owned and operated by

2

the appellants between July 1993 and July 1994. The resulting sales amounted to $11,284.55. Evidence also established that Aruna Matai deposited the transaction slips produced through the use of the stolen credit cards into a merchant account at Wachovia Bank. The deposit slips from the stolen credit cards were then commingled with the deposits of other cash and checks received at the Matais' stores. Also, the Matais drafted checks on the merchant account in an effort to disguise the illegal source of the funds obtained from use of the stolen credit cards.

In January 1994, Steve Holloman, a branch manager at Wachovia Bank, met with Aruna Matai to warn her about what he believed to be unusually large transactions for the business typically done at Home Boys of New York and Dan Hills. At that meeting, Holloman reminded Aruna Matai that she should compare signatures on the cards with the signatures made on the transaction slips.

Individuals who had stolen the credit cards used at the appellants' stores testified that they presented the stolen cards to Sandeep Matai, occasionally to Aruna Matai, or to both of them. After presentation of the stolen cards, the Matais permitted the credit card thieves to select and take clothing from either Home Boys of New York or Dan Hills. This clothing was then charged to the stolen credit cards. The amount charged to the stolen credit cards was generally higher than the value of the clothing given to the credit card thieves as their "reward."

The credit card thieves also testified that they were assisted in their use of the stolen credit cards by David Morgan and Gregory Woodard, employees of the Matais. The thieves testified that the Matais rarely checked the signatures on the transaction slips, and that, when they did, they checked only to ensure that the signatures were "similar enough" to the signatures on the cards. Although several of the credit card thieves testified that they dealt primarily with Sandeep Matai, several of these witnesses also had significant contact with Aruna Matai.

Witness Ronald Brice testified, for example, that after presenting a stolen card at one of the Matais' stores, Aruna Matai told Brice that he should bring stolen cards to the store after 5:00 p.m. when the

3

employees would be gone. Witness Jay Mays testified that he dealt both with Sandeep and Aruna Matai, but that Aruna Matai was more likely to make him re-sign a signature on a transaction slip so that it would more closely resemble the signature on the credit card. Additionally, the Matais' former employee, David Morgan, testified that when stolen credit cards were brought into the store, either Sandeep or Aruna Matai would run the credit card through the processing machine to determine whether the card had been reported stolen. If the card was still valid, charges would be made to the stolen card.

At the trial, there was no question that stolen credit cards were used at the Matais' stores and that the use of those cards was unauthorized. The Matais did not dispute that transaction slips from the stolen cards were deposited into the merchant checking account of Home Boys of New York and that withdrawals were made from that account. Furthermore, there was no dispute that the Matais compensated, with merchandise, those persons who brought the stolen credit cards to the stores. The only significant issue at trial was the knowledge of the Matais.

The government alleged that, at the time the cards were presented in the stores, the Matais knew that the cards had been stolen. They claimed that they did not know of the unauthorized status of the credit cards until after the transactions had been made and they were informed by their bank that the cards had been stolen.

II.

Aruna and Sandeep Matai make three arguments on appeal. They argue that they are entitled to a new trial because the district court (1) wrongfully issued a willful blindness instruction to the jury, and (2) failed to define reasonable doubt when it charged the jury. The Matais also assert that there was insufficient evidence to support a finding that their stores' inventory was subject to forfeiture.

At trial, Aruna Matai objected to the willful blindness instruction and to the district court's decision not to define the term "reasonable doubt." Sandeep Matai did not object on either ground, and he raises those issues before this Court for the first time. Accordingly, the "harmless error" standard governs review of Aruna Matai's claims on

4

those arguments, Fed. R. Crim. P. 52(a), and review of Sandeep Matai's claims is appropriate under the "plain error" standard, Fed. R. Crim. P. 52(b).

The Matais first argue that the district court erred in instructing the jury on the concept of willful blindness. A willful blindness instruction allows a "jury to impute the element of knowledge to [a] defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). A willful blindness instruction is proper where the evidence presented supports both actual knowledge and deliberate ignorance on the part of a defendant. United States v. Abbas, 74 F.3d 506, 513 (4th Cir.), cert. denied, 517 U.S. 1229 (1996). A district court must ensure, however, that a jury is not permitted to infer a defendant's guilty knowledge based upon a showing of mere careless disregard or mistake. United States v. Guay, 108 F.3d 545, 551 (4th Cir. 1997); United States v. Mancuso, 42 F.3d 836, 846 (4th Cir. 1994). In the money laundering context, we have stated that the knowledge element of the crime may be satisfied by a showing that the defendant either knew, or was "wilfully blind to the fact, that the transaction was designed for an illicit purpose." United States v. Campbell, 977 F.2d 854, 858 (4th Cir. 1992), cert. denied, 507 U.S. 938 (1993).

Neither of the Matais contested the accuracy of the willful blindness instruction, but only whether, under the facts in this case, it was appropriate to give the instruction. Aruna Matai contends that the willful blindness instruction was erroneously given because there was no evidence of deliberate ignorance, but instead, only of actual knowledge on her part. As we stated in Abbas, however, "[a] willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance." Abbas, 74 F.3d at 513 (quoting United States v. Gruenberg, 989 F.2d 971, 974 (8th Cir.), cert. denied, 510 U.S. 873 (1993)).

Aruna Matai asserted a lack of knowledge that the stolen credit cards were being presented or used at her stores. The evidence indicates, however, that she was present at her stores on several occasions when the stolen credit cards were used. Testimony also suggested that

5

on at least several occasions she had a role in processing the cards. Furthermore, Aruna Matai was responsible for the financial management of her stores, including the deposit of slips generated during the use of credit cards at Home Boys of New York and Dan Hills. Many of the illegal transactions involved purchases of substantially greater amounts than the typical purchase from those stores. Moreover, her failure to act following her conversation with Steve Holloman of Wachovia Bank, who spoke with her on the issue of questionable activity in her merchant's account, suggests a deliberate avoidance of knowledge of the use of stolen credit cards.

The district court properly concluded that evidence existed both of Aruna Matai's actual knowledge and of her deliberate ignorance of the illegal activity that occurred at her stores. Thus, the district court's inclusion of a willful blindness instruction was appropriate as to Aruna Matai. See Abbas, 74 F.3d at 513. Also, based upon the convincing evidence of Sandeep Matai's participation in the credit card fraud and, therefore, of his actual knowledge of that activity, we cannot say that the court committed "plain error" in instructing the jury on willful blindness as to him. The evidence supports the jury's findings on the knowledge element of the crimes of which he was convicted.

The Matais' next assignment of error, comprised of two separate but related arguments, focuses on the district court's refusal to define reasonable doubt in its final jury instructions. The Matais contend that the court erred by failing to include further instruction on reasonable doubt after earlier in the trial stating that it would do so. The Matais note that, in the district court's preliminary instructions to the jury, the court stated that it would give "further instruction on [reasonable doubt] later." During the parties' review of the proposed jury charge, counsel for Aruna Matai noted that the court's charge did not include a definition of "reasonable doubt." The court denied her request to include such a definition.

The Matais also contend that, although this Court has expressed its disapproval of the inclusion of an explanation as to reasonable doubt, this Court has not prohibited such an explanation. According to the Matais, a district court has some discretion to define reasonable

6

doubt, and, in this case, the district court abused that discretion by declining to do so.

The Matais correctly note that, as a rule, we caution district courts against defining reasonable doubt. See, e.g., United States v. Oriakhi, 57 F.3d 1290, 1300 (4th Cir.), cert. denied, 516 U.S. 952 (1995); United States v. Ricks, 852 F.2d 885, 894 (4th Cir. 1989), cert. denied, 493 U.S. 1047 (1990). We do not agree, however, with the Matais' argument as to the discretionary authority that district courts possess to define reasonable doubt. Instead, simply because our cases have not absolutely prohibited a district court from defining reasonable doubt, the district courts are not bound to instruct a jury on reasonable doubt simply because a party requests that instruction. See United States v. Reives, 15 F.3d 42, 44 (4th Cir.), cert. denied, 512 U.S. 1207 (1994) ("We have never found a refusal of a party's request for a clarifying instruction to be error."). Furthermore, the only exception that we have recognized to the general rule against defining reasonable doubt is in the context of responding to a jury's specific request for a definition. Reives, 15 F.3d at 45-46.

In this case, the district court recognized, and adhered to, our strong policy against a reasonable doubt instruction. The Matais had no right to a jury instruction on reasonable doubt even if they believed that the court planned to issue such an instruction. Accordingly, this Court concludes that the district court did not err with respect to either of the Matais on this issue.

Finally, the Matais argue that under 18 U.S.C. § 982(a)(1) there was insufficient evidence to support the jury's special verdict on forfeiture of the inventory of Home Boys of New York and Dan Hills Clothing. Section 982(a)(1) states that, "in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. § 1956] . . . [a court] shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

The Matais argue that no evidence showed that the store inventories were "involved in" the money laundering scheme. The Matais also contend that the court's instruction that forfeiture could be

7

ordered if the jury found that the inventories "facilitated" the money laundering was improper under the meaning of § 982(a)(1).

In <u>United States v. Schifferli</u>, 895 F.2d 987 (4th Cir. 1990), this Court held that, under the forfeiture provision at 21 U.S.C. § 881(a)(7), a dentist's office building was forfeitable following the dentist's conviction for conspiracy to distribute and dispense illegally certain prescription drugs. That section makes subject to forfeiture "[a]ll real property . . . used . . . to facilitate the commission of" a violation of Title 21 of the United States Code that is punishable by more than a year of imprisonment. 21 U.S.C. § 881(a)(7). The Court went on to state that "facilitation" required that there be a "`substantial connection between the property and the underlying criminal activity.'" <u>Schifferli</u>, 895 F.2d at 989 (quoting <u>United States v. Santoro</u>, 866 F.2d 1538, 1542 (4th Cir. 1989)). Furthermore, "`facilitate' implies that the property need only make the prohibited conduct `less difficult or "more or less free from obstruction or hindrance."'" <u>Id.</u> at 990 (quoting <u>United States v. Premises Known as 3639-2nd St., N.E., Minneapolis, Minnesota</u>, 869 F.2d 1093, 1096 (8th Cir. 1989)).

Other courts have borrowed <u>Schifferli</u>'s construction of "facilitate" in construing 18 U.S.C. § 981(a)(1), the civil forfeiture analog to § 982(a)(1). <u>See, e.g.</u>, <u>United States v. All Monies ($477,048.62) in Account No. 90-3617-3, Israel Discount Bank, New York, New York</u>, 754 F. Supp. 1467, 1473 (D. Haw. 1991); <u>United States v. Certain Funds on Deposit in Account No. 01-0-71417, Located at the Bank of New York</u>, 769 F. Supp. 80, 84 (E.D.N.Y. 1991). In <u>All Monies</u>, the court found that, although § 981(a)(1) does not expressly include the word "facilitate," it was reasonable to conclude that "property involved in" included property that "facilitated" illegal money laundering. <u>All Monies</u>, 754 F. Supp. at 1473. As part of a further analytical development, several courts that have interpreted § 982 have relied on § 981 case law. <u>See United States v. Tencer</u>, 107 F.3d 1120, 1134 n.5 (5th Cir. 1997) (citing <u>United States v. Voigt</u>, 89 F.3d 1050, 1087 (3d Cir.), <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 623 (1996)).

In this case, we, also, look to the foundation set in <u>Schifferli</u>. The reasoning in that case and in the other cases cited above is persuasive. In fact, those cases justify our conclusion that, under § 982(a)(1), "property involved in" criminal activity includes property that is sub-

8

stantially connected to that activity, in that it furthered, facilitated, or aided in the commission of the activity. As a result, property that is substantially connected to the commission of a money laundering offense, such that it assisted those convicted of the offense in committing the crime, is forfeitable under § 982(a)(1).

We believe that the evidence at trial proved a substantial connection between the inventories of Home Boys of New York and Dan Hills Clothing and the money laundering offense. The Matais used the inventories of these stores to reward their employees and the credit card thieves for their respective roles in procuring the stolen credit cards, which provided the mechanism for the money laundering scheme. The fact that store employees and the credit card thieves received store merchandise charged to the credit cards, but worth much less than the amounts billed to the cards, permitted additional funds to be laundered. Also, the use of the stores for the credit card fraud and money laundering operation provided a facade of respectability and lawfulness to the conduct that occurred within.*

In summary, we believe that the government produced substantial evidence to support a finding of forfeiture of the inventories of the Matais' stores. The forfeited property need not have been "indispensable" to the commission of a crime as long as it played a significant role in the prohibited activity. Schifferli, 895 F.2d at 990. Accordingly, we find that the district court's forfeiture order was proper.

_____

*After this appeal was filed, the Supreme Court decided United States v. Bajakajian, 118 S. Ct. 2028 (1998). There, the Court held that a criminal forfeiture under § 982(a)(1) that was "grossly disproportional" to the gravity of the harm violated the Excessive Fines Clause of the Constitution. Id. While the record does not reveal the exact value of the forfeited inventory of clothing, it certainly does not exceed $500,000, the fine available for violation of the money laundering statute. See 18 U.S.C. § 1956(a). The scheme continued for over a year and involved nine stolen credit cards. Furthermore, while the amount of monetary harm caused by the credit card fraud scheme until the time of arrest was only approximately $11,000, there is little doubt that the defendants would have continued the fraudulent scheme had they not been caught. We find, therefore, that the value of the forfeited goods was not grossly disproportional to the gravity of the fraud.

9

III.

For the reasons stated above, the district court did not err in instructing the jury on willful blindness, nor did it err by refusing to define reasonable doubt when charging the jury. Furthermore, the district court's forfeiture order regarding the inventories of the two stores owned by Aruna Matai rests upon sufficient evidence.

AFFIRMED

10