**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4087**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

HERBERT LEONEL DIAZ,

        Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:21-cr-00085-KDB-DCK-1)

---

Argued:  March 28, 2024                        Decided:  August 6, 2024

---

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and TRAXLER, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:**  Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Herbert Leonel Diaz appeals from his conviction for unlawful procurement of naturalization. *See* 18 U.S.C. § 1425(a). Finding no reversible error, we affirm.

I.

Diaz, a native of El Salvador, came to the United States in 1990, when he was twenty-one years old. He was denied asylum but given permission to work. Diaz became a lawful permanent resident in 2002. In 2003, Diaz, who was then living and working in California, began sexually assaulting his six-year-old niece. The abuse continued for several years. In 2006, Diaz raped his niece one morning before she went to school. She reported that rape, and the next day, Diaz quit his job and fled to North Carolina.

In 2010, Diaz applied for naturalization by submitting a Form N-400 application, which includes a number of questions relating to the applicant's "Good Moral Character." In the application, Diaz answered "no" to questions asking if he had ever committed a crime or offense for which he was not arrested, if he had ever given false information to government officials when applying for any immigration benefits, and if he had ever lied to government officials to gain entry into the United States. At his naturalization interview a few months later, Diaz affirmed that the contents of his application were true. The naturalization officer initialed the box indicating that Diaz had established "good moral character," J.A. 88, and informed Diaz that his naturalization request would be granted.

At Diaz's naturalization oath ceremony later that month, he was required to fill out a form that asked, among other things, whether he had committed any crimes since his interview for which he had not been arrested. Diaz answered "no," and certified that all of

3

his answers were true and correct. Diaz was admitted to the country as a naturalized citizen and received his naturalization certificate in March 2011.

Diaz was arrested and extradited to California in connection with his sexual assault of his niece in 2012. After his arrest, Diaz admitted that he had molested his niece over the course of several years. He subsequently pleaded guilty in California state court to five counts of lewd acts on a child and received a thirty-five-year sentence.

In 2021, Diaz was indicted on two federal charges: one count of knowingly procuring naturalization contrary to law, *see* 18 U.S.C. § 1425(a) (Count One); and one count of making a false statement in a passport application, *see* 18 U.S.C. § 1542 (Count Two). After the district court declined to dismiss Count One on statute-of-limitations grounds, Diaz elected to have a bench trial in order to preserve his right to appeal the limitations issue.[1] The government subsequently dismissed Count Two.

At trial, the government introduced numerous exhibits, including records from California relating to the sexual assault conviction and the 2010 Form N-400 in which Diaz denied committing any crimes for which he had not been arrested. The government also presented the testimony of Immigration and Customs Enforcement Deportation Officer Ronald Dorman. Dorman discussed the exhibits and the process the government went through to identify Diaz. The government did not ask Dorman if the information Diaz concealed about the sexual assault offenses he committed in California would have been

---

[1]      Diaz does not pursue the limitations issue on appeal.

4

material to the government's decision to grant citizenship to Diaz. Counsel for Diaz had

no questions for Dorman, and the government rested its case.

The district court then asked defense counsel, "[D]o you care to make a motion?"

J.A. 70. Counsel responded, "I mean, your Honor, I didn't intend to do this, but I do think

there's a materiality element that was not introduced at this point. I think the other elements

are easily met by the documents, but I do think there's a failure to introduce evidence of

materiality." J.A. 70. Counsel elaborated:

> Your Honor, I believe there's an element of the crime that any statements may -- I think, in the documents, they show that there's a statement made that -- that is incorrect regarding the past -- past conviction.

> Part of that -- a part of the crime is that the statement be material. I think it would have been incumbent on the Government to have the agent testify that, had the statement been different, it would have influenced the outcome of the determination on which they have not -- they did not elicit that testimony. And I do think that's an essential element of the offense, as I mentioned earlier this morning.

J.A. 71.

The government did not contend that its evidence was sufficient, but instead asked,

"your Honor, if the Court would allow, given the nature of these proceedings, if the Court

could reopen the evidence briefly, we'd ask questions of the Officer Dorman." J.A. 71. The

district court responded, "Well, just so we have a record, I'm going to allow you to do that

while I think about whether that's an appropriate remedy. But let's still make the record

for now while I consider the motion." J.A. 71. Counsel for Diaz did not object.

The government then recalled Dorman. He testified that he was familiar with the

naturalization and interview process; that certain criminal offenses qualify as aggravated

5

felonies, including sexual assault and lewd acts with children; that applicants who have

committed aggravated felonies are prohibited from becoming citizens; and that applicants

who have committed aggravated felonies do not have good moral character, as required to

become a citizen. Counsel for Diaz did not cross-examine Dorman, did not object at the

close of the reopened evidence, and offered no evidence in defense.

The court then rendered judgment, stating:

> Well, the Court is going to decide the matter on the reopened evidence and find the defendant guilty, but, if the Court has abused its discretion or otherwise committed error by doing so, of course that's an additional issue on appeal, which is why we've gone through this bench trial in the first place, is so that Mr. Diaz could preserve his statute-of-limitations argument for appeal.

> And the Court finds by beyond a reasonable doubt that the United States has proven each of the elements of the offense charged -- that is, the Court finds that Mr. Diaz did procure naturalization as reflected in the exhibits, but he did so knowingly -- again, as clearly reflected in the exhibits -- that his misstatements during the process were material, particularly referencing [his 2010 Form N-400] and the Question 15, under Section D, that asks the question, "Have you ever committed a crime or offense for which you were not arrested," answering no, whereas the later exhibits clearly show that he admitted to having engaged in the sexual offenses alleged, and that that would have been material to immigration and naturalization, had they known that, and that the procurement of the naturalization was thus contrary to law.

J.A. 74-75.

The district court subsequently sentenced Diaz to a within-Guidelines' sentence of eight months, to be served concurrently with the sentence on his state conviction.[2] This appeal followed.

## II.

Diaz was convicted of violating 18 U.S.C. § 1425(a), which makes it a crime to "knowingly procure[] . . . , contrary to law, the naturalization of any person." Although the statute does not explicitly include an element of materiality or causality, the Supreme Court has explained that to convict under the statute, "the Government must establish that an illegal act by the defendant played some role in her acquisition of citizenship." *Maslenjak v. United States*, 582 U.S. 335, 338 (2017). In cases where the illegal act is the making of a false statement, the government must "demonstrat[e] that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Id.*

Diaz argues that when the government rested its case, it had not proved the materiality of his failure to disclose his years-long sexual abuse of his niece, and that the district court erred by allowing the government to reopen its case without explicitly considering the factors this court has identified as relevant to the re-opening question. In

---

[2]    As counsel for Diaz noted at sentencing, "[t]he real penalty here is going to be the loss of naturalization which will come as a natural effect of this conviction." J.A. 122.

Diaz's view, because the government's evidence was insufficient when it rested, the district court should have granted his motion for acquittal.

Because counsel for Diaz never objected to the reopening of the government's case or to the court's consideration of the additional testimony and did not ever explicitly ask the district court to grant a judgment of acquittal, we agree with the government that plain-error review applies.[3] Under plain error review, Diaz bears the burden of establishing that a clear or obvious error occurred that affected his substantial rights and that the failure to correct the error would seriously affect the fairness, integrity, or public reputation of the judicial process. *See, e.g., United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017).

Whether to allow a party to reopen its case is a question left to the discretion of the district court. *See United States v. Abbas*, 74 F.3d 506, 510 (4th Cir. 1996) ("It is within the district court's sole discretion to reopen a case to admit new evidence."). When considering whether to permit a party to reopen its case, the district court

> must consider the timeliness of the motion, the character of the testimony, and the effect of granting the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's

---

[3] The government's first-line position is that statements made by counsel for Diaz during sentencing amounted to a *waiver* (as opposed to mere forfeiture) of the issue raised on appeal. We disagree. Considering together all of the statements made by counsel at sentencing, we see no indication of a knowing, intentional relinquishment of Diaz's appellate rights. *See United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) ("A waiver is the intentional relinquishment or abandonment of a known right. Waiver is to be distinguished from forfeiture, which is the failure to make the timely assertion of a right." (cleaned up)).

> case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

*United States v. Nunez*, 432 F.3d 573, 579 (4th Cir. 2005) (cleaned up); *see Abbas*, 74 F.3d at 511. Because the district court did not mention these factors when deciding to let the government reopen its case, Diaz contends the district court reversibly (and plainly) erred by reopening the case.

In a case tried before a jury, a district court's failure to consider these factors may well amount to reversible error, as these factors in large part focus on the jury and the likely effect the new evidence would have on the jury. But this was a bench trial, where the risks associated with re-opening and the consequences of error are decidedly different, and many of the factors identified in *Nunez* thus do not seem directly applicable. Under these circumstances, we are not as certain that the mere failure to explicitly address the factors is reversible error.

In any event, even if we assume for purposes of this opinion that the district court erred by not requiring an explanation from the government or not discussing the *Nunez* factors on the record, Diaz cannot show his substantial rights were affected by the errors. An error "affects substantial rights if it was prejudicial, meaning it affected the outcome of the district court proceedings." *United States v. Miller*, 41 F.4th 302, 311 (4th Cir. 2022) (cleaned up). As we will explain, we believe the evidence in the record before the government reopened its case was sufficient to show the materiality of the information Diaz failed to disclose.

As noted above, in prosecutions under § 1425(a) based on a false statement, the government must "demonstrat[e] that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Maslenjak*, 582 U.S. at 338. The evidence already in the record includes Diaz's Form N-400, which seeks information relevant to a criminal records search, and information about the applicant's "Good Moral Character," including whether the applicant had ever "committed a crime or offense for which you were not arrested," J.A. 85. The Form N-400 itself thus demonstrates that an applicant's criminal record is something that matters to an immigration official. That conclusion is further supported by the N-400 Worksheet filled out by the officer who interviewed Diaz and determined that he qualified for naturalization. The Worksheet lists the requirements for naturalization, including the requirement of establishing good moral character, and the interviewing officer puts his initials beside each requirement that the applicant has satisfied. These documents together show that good moral character is required for naturalization and that an applicant's past criminal activities are relevant to the moral character question.

In addition, the Notice of Diaz's Naturalization Oath Ceremony required Diaz to answer certain questions, including whether, since his interview, he had been arrested or committed crimes for which he has not been arrested. The notice explained that the purpose of the questions was to help the INS officer "determine [Diaz's] eligibility for naturalization," and that failure to provide the information "may result in a denial of the application for naturalization." J.A. 33. This form further establishes the materiality of the

10

information that Diaz lied about—the fact that the government asks about criminal conduct one more time, immediately before the final step in the naturalization process, shows that an applicant's criminal history matters to the government's decision to grant naturalization. We therefore have no difficulty concluding that the documentary evidence in the record before the government's case was reopened was sufficient, in and of itself, to establish the materiality of criminal history information to the naturalization process.

The evidence already in the record was likewise sufficient to establish the materiality of the specific information withheld by Diaz. As the Supreme Court explained in *Maslenjak*, "Congress has prescribed specific eligibility standards for new citizens," including the requirement of good moral character, and "[g]overnment officials are obligated to apply that body of law faithfully—granting naturalization when the applicable criteria are satisfied, and denying it when they are not." 582 U.S. at 347. Accordingly, the factfinder determining whether

> a defendant acquired citizenship by means of a lie . . . must evaluate how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law.
>
> *If the facts the defendant misrepresented are themselves disqualifying, the [factfinder] can make quick work of that inquiry. In such a case, there is an obvious causal link between the defendant's lie and her procurement of citizenship.* To take an example: An applicant for citizenship must be physically present in the United States for more than half of the five-year period preceding her application. Suppose a defendant misrepresented her travel history to convey she had met that requirement, when in fact she had not. *The Government need only expose that lie to establish that she obtained naturalization illegally—for had she told the truth instead, the official would have promptly denied her application.* Or consider another, perhaps more common case stemming from the "good moral character" criterion. That phrase is defined to exclude any person who has been convicted of an aggravated felony. If a defendant falsely denied such a conviction, she too

11

would have gotten her citizenship by means of a lie—for otherwise the outcome would have been different. *In short, when the defendant misrepresents facts that the law deems incompatible with citizenship, her lie must have played a role in her naturalization.*

*Id.* at 348-49 (emphasis added) (citations omitted).

Under the Immigration and Nationality Act, sexual abuse of a minor is an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(A), and any person convicted of an aggravated felony cannot be found to have good moral character, *see id.* § 1101(f)(8).[4] Although there was no *testimony* to that effect before the case was reopened, none was necessary, because whether criminal conduct qualifies as an aggravated felony is a question of law, not fact. *See, e.g., Cucalon v. Barr*, 958 F.3d 245, 249 (4th Cir. 2020).[5] The facts that Diaz hid from the government—that he sexually abused a minor for years and fled to avoid arrest—are therefore "incompatible with citizenship." *Maslenjak*, 582 U.S. at 349. Under these circumstances, the only thing the government needed to do to show materiality was prove Diaz's lie. Once it was established that Diaz committed a disqualifying aggravated felony, the causal link between Diaz's lie and his procurement of citizenship was obvious. *See id.* at 348 ("The Government need only expose that lie to establish that

___

[4]    At the time Diaz lied about his conduct, he had not yet been convicted of sexually abusing his niece. But there's no question that Diaz misrepresented a fact that (1) was relevant to one or more naturalization criterion that would have prompted officials to "undertake further investigation," and (2) the investigation would "predictably have disclosed some legal disqualification." 582 U.S. 349-50.

[5]    Had this been a jury trial, the district court would have instructed the jury on these legal principles. In a bench trial, the district court is charged with knowledge of the relevant law and applies that law to the facts as found.

she obtained naturalization illegally—for had she told the truth instead, the official would have promptly denied her application."); *id*. at 348-49 ("In short, when the defendant misrepresents facts that the law deems incompatible with citizenship, *her lie must have played a role in her naturalization*." (emphasis added)).

Because the evidence presented by the government before the case was reopened showed Diaz lied about conduct that disqualifies him from citizenship, the evidence was already sufficient to support Diaz's conviction under 8 U.S.C. § 1425(a). Diaz, therefore, was not prejudiced by any error in the district court's decision to allow the government to reopen its case and cannot show a violation of his substantial rights. Accordingly, for the foregoing reasons, Diaz's conviction and sentence are hereby

*AFFIRMED.*