**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                    No. 04-4484

JENNY NUNEZ,
            *Defendant-Appellant.*


UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                    No. 04-4504

CARLOS ALBERTO NUNEZ,
            *Defendant-Appellant.*


Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-03-161)

Argued: September 22, 2005

Decided: December 21, 2005

Before TRAXLER and GREGORY, Circuit Judges, and
R. Bryan HARWELL, United States District Judge for the
District of South Carolina, sitting by designation.

---

Vacated and remanded by published opinion. Judge Traxler wrote the
opinion, in which Judge Gregory and Judge Harwell joined.

---

**COUNSEL**

**ARGUED:** Meghan Suzanne Skelton, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellants. Sara Elizabeth Flannery, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Alexandria, Virginia, Mary E. Maguire, Assistant Federal Public Defender, Carolyn V. Grady, Assistant Federal Public Defender, Richmond, Virginia, for Appellants. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Appellants Jenny Nunez and Carlos Nunez challenge their convictions and sentences for conspiracy to possess with intent to distribute and distribution of cocaine and heroin, in violation of 21 U.S.C.A. § 846 (West 1999); possession with intent to distribute and distribution of cocaine and heroin, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999) and 18 U.S.C.A. § 2 (West 2000); and attempted possession with intent to distribute cocaine and heroin, in violation of 21 U.S.C.A. § 846 and 18 U.S.C.A. § 2. We vacate and remand for retrial.

I.

The evidence at trial, viewed in the light most favorable to the government, *see United States v. Burgos*, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), reveals the following facts.

In October 2000, the Drug Enforcement Agency ("DEA") in Miami, Florida, received a tip that Hymie Acosta was smuggling cocaine and heroin from Colombia, South America, into the United States on food carts of airplanes landing at Miami International Airport and that Martha Gray was distributing the drugs for Acosta in the

Miami area. During surveillance, Gray and Acosta were observed at the home of Carlos and Jenny Nunez, who were married and living in the Miami area. Following standard operating procedures, the Miami DEA entered the Nunezes into the DEA indexing computer program.

Martha Gray was arrested in April 2001, following the seizure of a shipment of drugs from a flight that landed in Miami. She agreed to cooperate with authorities in May 2003. Gray testified she had approached Acosta for a job after she was laid off by American Airlines and began to collect and deliver money for him. She later became involved with the drug smuggling operation as well. Acosta would notify Gray of the flight carrying the smuggled drugs and the expected amount, and Gray would contact Adnan Shwani and Willie Floyd, their contacts at the airport. Floyd unloaded the drugs from the food carts and delivered them to Shwani, who delivered the drugs to Gray. Gray distributed the drugs pursuant to Acosta's instructions and collected money. Gray testified that she delivered drugs to Jenny and Carlos Nunez for Acosta.

DEA agents in Washington, D.C., began investigating drug trafficking activities of Kerry Bond and his associates, including Reginald Robinson, in the Washington area in the year 2000. This investigation led to the arrest of several individuals who, in the course of cooperating with authorities, identified Guillermo "Willie" Padrone, from Miami, Florida, as their drug source.

Padrone was arrested in 2002 and also began to cooperate with authorities. He identified Carlos Nunez as his supplier for powder cocaine and heroin. Padrone testified that, following a short hiatus from his former drug-dealing activities, he began dealing drugs in the fall of 2000 and reconnected with Carlos Nunez as his supplier.[1] He and other witnesses testified regarding the involvement of Carlos and Jenny Nunez in the distribution scheme. When the Washington DEA agents indexed the Nunez name in the course of their investigation,

---

[1]Padrone testified that, for a short period of time in 1999, he had obtained powder cocaine from Carlos Nunez in Miami and distributed it to Robinson and Bond, both of whom lived and distributed the drugs in the Washington, D.C. area.

also via standard procedure, the name surfaced as having been previously indexed by the Miami DEA. This led to a cooperative investigation.

On August 12, 2003, Carlos and Jenny Nunez were arrested in Miami on a federal arrest warrant issued from the Eastern District of Virginia. Jenny, who speaks Spanish, was advised of her *Miranda* rights in her native language and agreed to submit to questioning by DEA agents Mary Toomey and Oscar Negron. Agent Toomey speaks English, but Agent Negron's native language is Spanish. Thus, Agent Negron translated Agent Toomey's questions and Jenny's answers during the questioning. On August 14, 2003, Agent Toomey prepared a written Report of Investigation, (the "Report") from notes taken by her from Agent Negron's translation. The Report implicates Carlos and Jenny Nunez, along with other coconspirators, in the Colombia-to-Washington drug distribution conspiracy.

Carlos thereafter filed a motion to sever his trial from Jenny's trial, arguing that her statement could not be redacted in a way that the jurors would not know that it implicated him and, therefore, that it would run afoul of his Sixth Amendment rights. Jenny filed a motion to suppress introduction of her statement, arguing that it was not voluntarily given. The court denied both motions and ruled that the introduction of a redacted statement would sufficiently protect Carlos.

The government prepared a redacted statement and subpoenaed Agent Toomey from Florida to introduce it at trial. On the first day of trial, however, the Supreme Court issued its opinion in *Crawford v. Washington*, 541 U.S. 36 (2004), which held that the introduction of out-of-court testimonial statements is barred by the Confrontation Clause unless the witness is unavailable *and* the defendants had a prior opportunity to cross-examine the witness.[2] *See id.* at 68. The following day, the appellants moved to bar Agent Toomey from offering the Report into evidence because it was not a first-hand account of

---

[2]*Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) (internal quotation marks omitted), under which an unavailable witness's statement could be admitted if it bore "adequate indicia of reliability," meaning that it fell "within a firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness."

Jenny's statements. In light of *Crawford*, the district court reversed its earlier ruling, holding that only Agent Negron could testify as a fact witness regarding Jenny's statements during the interview. The statement prepared in English by Agent Toomey from her notes of the translation was a hearsay statement which would run afoul of the Confrontation Clause. Thus, Agent Negron offered testimony regarding Jenny's statements, but the Report was not admitted.

After jury deliberations had begun in the trial, the jury sent a note to the court advising it was unable to locate the Report of Jenny's interview. Although the Report had not been introduced into evidence, it had been referred to during the testimony of Agent Negron and Jenny Nunez. Upon prompting by the district court, the government then moved to reopen the evidence to allow belated admission of the previously-excluded Report. Because "[e]xtensive use of [the Report] was made throughout the examination," the district court noted that it "would have let it go to the jury had [the government] requested." J.A. 951-52. Accordingly, the district court ruled that it would "re-open the evidence and let it in." J.A. 952. The Report summarizing the interview of Jenny was then submitted to the jury in its original unredacted form without affording either Jenny or Carlos an opportunity to present additional testimony or argument. Both appellants objected to the belated admission of this evidence and moved for a mistrial, which was denied.

The jury thereafter returned a verdict convicting Carlos and Jenny of conspiracy to possess with intent to distribute and distribution of cocaine and heroin, possession with intent to distribute and distribution of cocaine and heroin, and attempted possession with intent to distribute cocaine and heroin. Carlos and Jenny moved for a new trial, arguing that the district court improperly reopened the evidence to admit the Report. The motions were denied. Carlos was sentenced to 188 months imprisonment, and Jenny was sentenced to 151 months imprisonment. This appeal followed.

II.

We first address the appellants' contention that the district court abused its discretion when it failed to give their requested jury instruction regarding multiple conspiracies. The Nunezes contend that

the evidence demonstrated the existence of two distinct distribution conspiracies, one in the Miami area (involving Acosta, Gray, Shwani, and Floyd), and a separate one in the Washington area (involving Padrone, Bond, and Robinson), and that they were therefore entitled to a multiple conspiracy instruction. We disagree.

"A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved *only* in [a] separate conspirac[y] *unrelated* to the overall conspiracy charged in the indictment." *United States v. Squillacote*, 221 F.3d 542, 574 (4th Cir. 2000) (citations and internal quotation marks omitted). The focus of a conspiracy is the single-mindedness to achieve a particular goal. Generally, "[a] single conspiracy exists where there is one overall agreement, or one general business venture. Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *Id.* (citation and internal quotation marks omitted). However, "one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). Also, it is not necessary that the conspiracy "have a discrete, identifiable organizational structure." *Id.* Often, the single conspiracy is comprised of a "loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." *Id.*

Here, the evidence was more than sufficient to justify the district court's determination that a single conspiracy was at work. According to the evidence presented by the government, Acosta arranged for the drugs to be smuggled into the United States on airliners arriving in Miami from Colombia and notified Gray of the specifics of the shipment. Shwani and Floyd transferred the drugs from the airliners to Gray, and Gray transported the drugs to the Nunezes in Miami. The Nunezes, in turn, operated as a conduit to Padrone, who arranged for transportation and distribution of the drugs to Bond and Robinson for ultimate distribution in the Washington area. Coconspirators in both locales described the unique way the drugs were packaged, which remained unchanged from the time they were smuggled into the country until their delivery in the Washington area. Telephone records confirmed contact between Padrone and Carlos and between Carlos

and Acosta. And, there was ample evidence that the drugs were fronted all along the distribution chain.

In sum, far from demonstrating the existence of two separate and distinct conspiracies, the evidence revealed that the Nunezes were intimately connected with the conspirators in both locales and, indeed, were the common bond between them. If accepted and believed by the jury, the evidence indicated that the conspirators in Miami and in the Washington area shared the common goal and mutual interest to obtain heroin and cocaine from Colombia and distribute it for profit in the Washington area. Accordingly, the district court did not abuse its discretion in failing to give the requested multiple conspiracy instruction.

## III.

We next address the Appellants' contention that their convictions should be vacated because the district court improperly reopened the evidence after jury deliberations had begun and admitted the Report summarizing Jenny's alleged confession.

## A.

A district court's decision to reopen a case to admit additional evidence is normally "within [its] sole discretion." *United States v. Abbas*, 74 F.3d 506, 510 (4th Cir. 1996). In exercising this discretion, however, the district court is directed to consider several factors:

> [T]he court must consider the timeliness of the motion, the character of the testimony, and the effect of granting the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, *or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.*

*United States v. Peay*, 972 F.2d 71, 73 (4th Cir. 1992) (citation and internal quotation marks omitted) (emphasis added); *see also Abbas*, 74 F.3d at 510-11 (noting that courts should examine "(1) whether the party moving to reopen provided a reasonable explanation for failing to present the evidence in its case-in-chief; (2) whether the evidence was relevant, admissible, or helpful to the jury; and (3) whether reopening the case would have infused the evidence with distorted importance, prejudiced the opposing party's case, or precluded the opposing party from meeting the evidence."). A district court's refusal to grant a new trial is also reviewed for an abuse of discretion. *See United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995).

B.

With these principles in mind, we review the circumstances surrounding the disputed evidence and its ultimate admission as substantive evidence for the jury's consideration.

1.

During the government's case, Agent Toomey and Agent Negron testified. Agent Toomey, however, was not questioned regarding the Report because it had been excluded from evidence. Because the Report was prepared from the translation provided by Agent Negron, and not from Jenny's direct statements to the preparer of the Report, the court had ruled that the Report was hearsay precluded under the Confrontation Clause and that only Agent Negron could testify as to Jenny's statements. Consistent with the district court's ruling, Agent Negron testified and provided a short account of the interview process and a summary of the statements made by Jenny to him concerning the drug activities of the conspirators. However, Negron made no mention of Carlos's involvement in the alleged drug distribution scheme during his testimony; in fact, the testimony appeared to have been carefully presented so as to avoid any reference to Carlos by name. Agent Toomey was recalled by the appellants after the government rested, but again she was not questioned regarding the specifics of the interview of Jenny, Agent Negron's translation of Jenny's statements to Agent Toomey, or Agent Toomey's preparation of the Report.

Carlos and Jenny both testified and categorically denied any involvement in the alleged drug distribution activities. Carlos had not been implicated during Agent Negron's testimony and the Report was still not in evidence. Consequently, there was no discussion of the Report during his examination. Jenny was cross-examined by the government regarding the statements Agent Negron had attributed to her during his examination and, in doing so, the government referred to some of the information contained in the Report. However, Jenny denied making the alleged incriminating statements referenced by the government. The government made no attempt to introduce the Report at that time and did not seek to recall Agents Negron and Toomey to introduce the Report as substantive evidence for the jury's consideration.

In contrast to the excerpts of information discussed during the government's examination of Agent Negron and referred to in the cross-examination of Jenny, the actual Report prepared by Agent Toomey is a typed, five-page summary of alleged statements made by Jenny during the interview. It consists of a short "Synopsis," followed by nine single-spaced paragraphs of "details" of the conspiracy. In addition to memorializing Jenny's activities, the Report contains her detailed account of the activities of Acosta, Acosta's contacts in Colombia, Gray, Padrone, as well as those of her co-defendant and husband Carlos, who is mentioned in the Report by name. It sets forth the manner in which the conspiracy developed, as well as the specifics of how the drugs were transferred from Gray to Carlos, then to Padrone, and on to the Washington area, and how the money was returned and divided. Even a cursory comparison of the testimony presented and the Report reveals a stark contrast between the information provided by the testimony and the detail contained within the Report. In essence, the Report presents a concise, well-written, closing argument on the conspiracy count, and many of the individual counts, and was quite incriminating to both Jenny and Carlos.

Prior to the close of the evidence and the summation, the jury had been made aware that the Report existed. The Report had been used to refresh Agent Negron's recollection during his direct examination by the government and, no doubt, the jurors were aware that the government had the Report in hand. Perhaps the government even read directly from it during its cross-examination of Jenny. However, the

Report was not in evidence, nor had its detailed contents ever been presented in their entirety as substantive evidence against Jenny or Carlos.

2.

Under the circumstances, we are constrained to hold that the district court abused its discretion in permitting the Government to reopen its case to present the written, unredacted Report in its entirety *after* summation was closed *and* the jury had begun deliberations.

First, the government has presented no "reasonable explanation" for its failure to timely seek introduction of the Report as substantive evidence during the trial, stating only that it made no effort to introduce the Report as evidence during the appellants' case or on rebuttal given that the district court had already ruled it inadmissible.

Second, as we explain below, even if relevant and helpful to the jury in ascertaining the guilt or innocence of the Nunezes, the evidence was not "admissible" or "technically adequate" when presented. *Peay*, 972 F.2d at 73.

The appellants contend that admission of the Report violated their Sixth Amendment rights to confrontation because neither were afforded an opportunity to cross-examine Agent Toomey or Agent Negron about the Report. *See Crawford*, 541 U.S. at 68. In addition, Carlos argues that the admission of the statement violated his rights under the Confrontation Clause because the unredacted statement contained Jenny's references to Carlos's participation in the drug conspiracy. *See Bruton v. United States*, 391 U.S. 123, 135-36 (1968).

In response, the government argues that, once Jenny testified, the prior statement became admissible under Rule 613(b) of the Federal Rules of Evidence. *See id.* ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."). The government argues that *Bruton* does not apply because, once Jenny testified, Carlos had the

opportunity to cross-examine her and her statements relating to Carlos's role in the conspiracy became admissible. Thus, the government argues that, had it moved to introduce the statement *after* Jenny was cross-examined, Jenny's statement, including its implications of Carlos in the conspiracy, would have been admissible as extrinsic evidence in rebuttal.

Assuming that the government is correct regarding the propriety of introducing the Report in rebuttal, however, that fact does not cure the problem at hand. At best, the Report would only have been admissible at that point if it had been properly introduced through the agents. Jenny and Carlos would have been afforded an opportunity to cross-examine the agents on the Report and to meet the very incriminating nature of the Report with additional evidence and cross-examination on their part. And, at a minimum, Jenny and Carlos would have had the ability to address the Report and argue its relevance and weight to the jury during summation. Because this was not done, the evidence was not "admissible [or] technically adequate" when presented. *Peay*, 972 F.2d at 73.

Finally, and for the same reasons outlined above, the district court's decision to reopen the evidence to admit the Report *after* the jury had retired for deliberations and in response to the jury's request infused the evidence with distorted importance, prejudiced the appellants' case, and denied the appellants a fair opportunity to respond to the additional evidence. *See id.*; *Abbas*, 74 F.3d at 511.

At best, the Nunezes had some opportunity to examine Agent Negron about the limited statements he attributed to Jenny during his testimony that were also contained in the Report. However, there was no reason for the appellants to cross-examine Negron regarding specifics of the Report that had *not* been related to the jury or the specifics of the preparation of the Report. Nor could Agent Negron fully respond to specific questions regarding the Report's preparation, as Agent Toomey prepared it two days after the interview was completed from the notes she took from Agent Negron's translation. At no time did Jenny or Carlos have a reason to cross-examine Agent Negron regarding all of the statements in the Report. In addition, Jenny's alleged statements regarding Carlos's role in the conspiracy were only contained within the written Report, which was not admit-

ted until well after Carlos's opportunity to cross-examine Jenny had passed.[3]

In sum, we think it clear that the district court abused its discretion in reopening the evidence to allow admission of the incriminating Report after jury deliberations had begun. In doing so, the Report gained distorted importance, prejudiced the appellants' case, and precluded the appellants from "having an adequate opportunity to meet the additional evidence offered." *Peay*, 972 F.2d at 73 (citation and internal quotation marks omitted). *Cf. United States v. Bayer*, 331 U.S. 532, 538 (1947) (noting that the reopening of a case to admit a document four hours after the jury had begun deliberating would be prejudicial to the government because it "would then have had no chance to comment on it, summation having been closed," and to the codefendant who, "with no chance to cross-examine or to comment would be confronted with a new item of evidence against him"); *United States v. Paz*, 927 F.2d 176, 179 (4th Cir. 1991) (finding no abuse of discretion in district court's refusal to reopen a case for the defendant after both parties had presented proof, rested, made closing arguments, and the district court rendered a verdict).[4]

---

[3]Carlos also argues that admission of the Report violated his Fifth Amendment rights to due process under *Doyle v. Ohio*, 426 U.S. 610, 611 (1976), because it included a reference to his decision not to waive his rights and cooperate with agents. In light of our decision that the belated admission of the Report was an abuse of discretion based upon the concerns of the Confrontation Clause, we express no opinion as to whether the *Doyle* error was harmless because Jenny alerted the jury to the fact that Carlos had exercised his right to remain silent.

[4]For the same reasons, the district court abused its discretion in failing to grant a new trial. In light of our decision, we note, but find it unnecessary to rule upon, appellants' alternative claim that the district court improperly inserted itself into the trial by suggesting to the government that it move to reopen the evidence. We also find it unnecessary to address appellants' claims that the district court erred in limiting Jenny's cross-examination of Agent Negron, and that their sentences must be vacated under *United States v. Booker*, 125 S. Ct. 738 (2005). The district court is free to consider these issues anew should they arise on retrial.

For the foregoing reasons, we vacate the convictions and sentences imposed upon Jenny and Carlos Nunez and remand for retrial.

*VACATED AND REMANDED*