**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-4102

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH EUGENE SAMPLER,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, District Judge. (6:07-cr-00031-nkm-1)

Argued: January 29, 2010                    Decided: March 3, 2010

Before MOTZ, GREGORY, and DAVIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge Davis joined.

**ARGUED:** Sidney Harold Kirstein, Lynchburg, Virginia, for Appellant. Donald Ray Wolthuis, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Julia C. Dudley, United States Attorney, Roanoke, Virginia, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Kenneth Eugene Sampler ("Sampler") appeals his conviction and sentence for conspiracy to distribute methamphetamine on sufficiency of the evidence and related grounds. He admits participating in methamphetamine distribution on separate occasions but claims that this is legally insufficient to support the jury's conclusion that he conspired to join a single distribution conspiracy. We reject each of Sampler's arguments and affirm.

I.

In August 2007, a grand jury indicted Sampler on one count of conspiracy to distribute more than 500 grams of a mixture or substance containing methamphetamine, under 21 U.S.C. § 846 (2006). The indictment charged several other individuals, none of whom Sampler had met or even known of prior to his indictment, and identified several unnamed co-conspirators as being part of the plot. The government's theory at trial was that Sampler was a middleman in a drug-distribution chain, with a group of Mexican drug dealers based in the Atlanta area at the top, and the other named co-defendants, mostly low-level methamphetamine distributors in Virginia, at the bottom. Prior to trial, Sampler's co-defendants all pled guilty to their charges.

2

To support its theory, the government introduced the testimony of two men, Dennis Martin ("Martin") and Thomas Jamerson ("Jamerson"), who were arrested shortly after purchasing methamphetamine from a man named "Oscar" in a transaction arranged by Sampler in Atlanta. Both testified that Sampler was paid $5,000.00 for his assistance, which included arranging a location for the sale and providing transportation for Martin, Jamerson, and the drugs they purchased. Martin and Jamerson admitted to frequently driving from Virginia to Atlanta to purchase methamphetamine, which they would then distribute to dealers in Virginia. Both testified that they typically would use Martin's cousin to find an intermediary who could arrange the methamphetamine purchase from an upper-level dealer, but that Sampler had only arranged the transaction immediately preceding their arrests. Martin testified, however, that he had discussed potential, future drug transactions with Sampler.

Likewise, Jamerson testified that while he and Sampler were in jail together following their arrests, Sampler had explained the process by which he located methamphetamine for the drug buy and his role in the distribution hierarchy. According to Jamerson, Sampler described a man named "Carlos" as the head methamphetamine manufacturer and distributor in Atlanta and admitted to trafficking significant quantities of methamphetamine for Carlos to a corrupt federal agent in South

3

Carolina. Jamerson also claimed that Sampler told him about his continuing work with other dealers who worked below Carlos, including the man from whom Sampler arranged for Martin and Jamerson to buy methamphetamine.

Sampler took the stand in his own defense. During his testimony, he admitted to trafficking methamphetamine for Carlos to South Carolina on at least five separate occasions, as well as to facilitating the transaction involving Oscar, Martin, and Jamerson. He insisted, however, that he knew nothing about Martin and Jamerson's distributing methamphetamine in Virginia and that his prior distribution for Carlos in South Carolina was unrelated to the Atlanta transaction.

At the conclusion of the defense's case, the district court instructed the jury on conspiracy law and told the jury that it was to acquit Sampler if it found that the government proved the existence of separate conspiracies, rather than one, overarching crime. The jury then convicted Sampler of the sole conspiracy count, and the district court subsequently sentenced Sampler to 151-months imprisonment, finding that Sampler had trafficked 120 kilograms of methamphetamine, in total, during the conspiracy. Sampler appeals.

II.

Sampler raises three, interrelated issues on appeal. First, he challenges the sufficiency of the evidence under which he was convicted of conspiring with the named co-defendants in the indictment. Next, he argues that the district court erred by allowing the government to introduce evidence of Sampler's prior drug-trafficking activities and drug crimes committed by other alleged conspirators and by allowing the government to use an illustrative chart featuring Sampler in its opening statement. Finally, he argues that the district court erred in including the amount of methamphetamine that he admitted to previously trafficking in determining his sentence. We address each issue in turn.

a.

We will uphold a defendant's conviction following a jury trial so long as there is substantial evidence to support it when that evidence is viewed in the light most favorable to the government. United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006). Whether there is a single conspiracy or multiple conspiracies is a factual question for the jury, whose conclusion must be upheld "unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury to so find." United States v. Harris, 39 F.3d 1262, 1267 (4th Cir. 1994).

5

It is well-settled that "[w]hether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." United States v. Nunez, 432 F.3d 573, 578 (4th Cir. 2005). The existence of "parallel suppliers, or middlemen, or street dealers" does not itself mean that there are multiple conspiracies. United States v. Harris, 39 F.3d 1262, 1267 (4th Cir. 1994). This is particularly so where the defendant is a key link between what he alleges to be the separate conspiracies. Nunez, 432 F.3d at 578. Finally, a defendant need not know about the participation or even existence of co-conspirators so long as the government proves "the essential nature of the plan" and the defendant's connection to it. United States v. Blumenthal, 332 U.S. 539, 557 (1947).

The testimony of Martin, Jamerson, and Sampler all tended to show a large conspiracy with "Carlos" at the top; Sampler and others as intermediate facilitators and distributors in the middle; Martin and Jamerson as traffickers; and low-level distributors in Virginia and South Carolina at the bottom. They all shared the same objective of profiting from methamphetamine distribution in the south-eastern United States. Sampler's trafficking to "parallel suppliers" in South Carolina and Virginia does not undermine the government's showing that there was a single conspiracy. Harris, 39 F.3d at 1267. And he

6

cannot separate his goal of distributing methamphetamine to Martin and Jamerson in Atlanta with their distribution in Virginia because he was the crucial link between the two. Nunez, 432 F.3d at 578. Because these activities encompassed overlapping participants with the same methods and goals, a reasonable jury was free to find Sampler guilty of being part of this one, larger conspiracy.

Sampler also argues that even if the evidence at trial was sufficient to prove a single conspiracy's existence, the evidence was insufficient to prove that he joined that conspiracy. What the evidence shows, he submits, is that he was only a facilitator who helped a willing drug buyer find a willing seller; a showing that is legally insufficient to prove that he joined a conspiracy. See United States v. Giunta, 925 F.2d 758, 767 (4th Cir. 1991), overruled on other grounds, United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). The so-called facilitator defense is inapplicable here, though, because the evidence showed that Sampler was actively involved in the conspiracy to distribute methamphetamine. See United States v. Mills, 995 F.2d 480, 483-84 (4th Cir. 1993) (explaining that facilitator defense is unavailable to defendant who himself distributed and stored drugs). Not only did he locate a seller for a willing buyer, but he physically brought the parties together and was a necessary cog in the wheel of a

7

continuing distribution scheme. Furthermore, the evidence, including Sampler's own testimony, showed that Sampler trafficked drugs on several occasions as part of the same conspiracy. The evidence therefore was sufficient to establish that his role in the conspiracy was much greater than that of a passive facilitator.

b.

Sampler next challenges several of the district court's evidentiary rulings, which he claims allowed the government to introduce unfairly prejudicial evidence to the jury. We review these rulings for abuse of discretion. United States v. Vidacak, 553 F.3d 344, 348 (4th Cir. 2009).

At trial, both Martin and Jamerson testified as to Sampler's visits to the methamphetamine-manufacturing facility and his prior methamphetamine trafficking to South Carolina. Sampler objected at trial and argues on appeal that this was prior-bad-acts evidence, inadmissible under Federal Rules of Evidence 404(b). As this Court has previously explained, however, "[e]vidence of uncharged conduct is not considered 'other crimes' evidence if it arose out of the same series of transactions as the charged offense or if it is necessary to complete the story of the crime on trial." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994). Here, the evidence was part of the single conspiracy for which Sampler was charged,

8

not evidence of distinct crimes. Evidence that Sampler had previously trafficked drugs for the same kingpin and with several other players in the hierarchy illustrates that those acts were part of the same scheme for which he was indicted. The district court therefore did not err by admitting this evidence.

Likewise, the court did not err by allowing Martin and Jamerson to testify about purchasing drugs through other intermediaries and selling those drugs to other conspirators named in Sampler's indictment. This testimony was clearly relevant to the government's proving a larger conspiracy and helped to situate Sampler within the larger confederation. Further, Sampler has presented us with no basis by which we could conclude that this evidence unduly prejudiced him, beyond its tending to show the existence of the underlying conspiracy with which Sampler was charged.

Finally, Sampler argues that the district court erred by allowing the government to refer to an illustrative chart describing the conspiracy. Sampler claims that the chart unduly prejudiced him because the government placed his name in the center and made his picture larger than other conspirators. The government is permitted, however, to use pictures, charts, and other illustrative devices so long as they help jurors to understand the evidence presented and the court ensures that

9

jurors do not consider the devices, themselves, as evidence. United States v. Janati, 374 F.3d 263, 273 (4th Cir. 2004); United States v. Johnson, 54 F.3d 1150, 1159 (4th Cir. 1995). Here, the pictures merely showed the structure of the conspiracy, which the government then proved through testimony at trial. Sampler's picture was larger than that of the other alleged-conspirators, but there is no reason to believe that this misled the jury as to his substantive role in the conspiracy, particularly in light of the district court's instruction that the jury could not consider the chart as evidence. Therefore, the district court did not err by allowing the government to use the chart during its presentation.

c.

Lastly, Sampler challenges the quantity of methamphetamine the district court considered in calculating his sentence. We review a district court's legal conclusions regarding a sentence de novo, United States v. Fullilove, 388 F.3d 104, 106 (4th Cir. 2004), and factual determinations for clear error, United States v. Pauley, 289 F.3d 254, 258 (4th Cir. 2002).

According to Sampler, the district court wrongfully considered the amount of methamphetamine Sampler admitted trafficking to South Carolina when calculating his sentence, because that trafficking was not sufficiently related to the conviction offense and because the amount trafficked could not

10

be reliably calculated.  We reject these claims in light of our conclusion that the government sufficiently proved that the South Carolina trafficking was part of the overall conspiracy for which Sampler was convicted and because Sampler admitted to trafficking the amount considered by the district court in its calculation.

## III.

For the above reasons, we affirm Sampler's conviction and sentence.

AFFIRMED

11